**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | |
|---|---|
| PAPERLESS SOLUTIONS GROUP, INC.,<br><br>Plaintiff,<br><br>v.<br><br>MIB GROUP, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>) C.A. No. N24C-11-277 MAA CCLD<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Submitted: April 2, 2025
Decided: May 21, 2025

*Defendant MIB Group, Inc.'s Motion to Dismiss:*
**GRANTED.**

## MEMORANDUM OPINION

Matthew F. Davis, Esquire and Charles R. Hallinan, Esquire, of POTTER ANDERSON & CORROON LLP, Wilmington, DE, and Matthew G. Lindenbaum, Esquire (Argued) and Samantha Ahearn, Esquire, of NELSON MULLINS RILEY & SCARBOROUGH LLP, Boston, MA, *Attorneys for Plaintiff*.

Thomas A. Uebler, Esquire and Sarah P. Kaboly, Esquire, of MCCOLLOM D'EMILIO SMITH UEBLER LLC, Wilmington, DE, and Wayne F. Dennison, Esquire (Argued) and Meghan E. McCafferty, Esquire, of BROWN RUDNICK LLP, Boston, MA, *Attorneys for Defendant*.

**Adams, J.**

## INTRODUCTION

This dispute concerns an asset purchase agreement entered into by Plaintiff Paperless Solutions Group, Inc. ("Paperless") and Defendant MIB Group, Inc. ("MIB"). Paperless sold its business to MIB. The asset purchase agreement provides MIB with broad discretion in operating the business after closing. Paperless filed this action against MIB alleging MIB fraudulently induced Paperless into forming the asset purchase agreement, breached the same, breached the implied covenant of good faith and fair dealing, and violated the Massachusetts Consumer Protection Law. MIB moved to dismiss the entire complaint. For the reasons that follow, MIB's Motion is GRANTED.

## FACTS[1]

### A. The Parties

Paperless is a Florida corporation with a principal place of business in Florida.[2] Paperless "is engaged in the business of providing a technology-enabled, direct-to-consumer distribution platform where consumers can shop for complex health and life insurance policies from some of the nation's leading insurance

---

[1] These facts are drawn from the Complaint. D.I. 1 ["Compl."]. These allegations are presumed to be true solely for purposes of the Motion to Dismiss.

[2] Compl. ¶ 6.

carriers."[3]  MIB is a Delaware corporation with a principal place of business in Massachusetts.[4]

## B. The Asset Purchase Agreement

In August 2020, MIB contacted Paperless, expressing interest in acquiring Paperless as a corporation.[5]  At that time, Paperless was negotiating with nonparty COVR Financial Technologies, Inc. ("COVR") regarding the sale of Paperless.[6] Paperless proceeded to negotiate with both MIB and COVR to determine which, if either, would be a good choice for a buyer.[7]

During negotiations with MIB, Paperless emphasized its desire that the business be expanded after the close of any transaction.[8]  MIB and Paperless engaged in negotiations during various phone calls, in which MIB allegedly assured Paperless of its intent to scale the business.[9]  MIB allegedly represented that it would:

a) Make investments in capital and human resources to grow the value and business of [Paperless];
b) Utilize the [MIB] Board's relationships with U.S. Life Insurance executives to expand the reach of [Paperless'] technology; and
c) Do whatever was required to maximize the reach and value of [Paperless'] technology.[10]

---

[3] *Id.* at ¶ 11.
[4] *Id.* ¶ 7.
[5] *Id.* ¶ 12.
[6] *Id.* ¶ 13.
[7] *Id.* ¶ 14.
[8] Compl. ¶ 17.
[9] *Id.* ¶¶ 16, 21, 23.
[10] *Id.* ¶¶ 21-23, 47.

2

Paperless ultimately decided to sell to MIB because of MIB's commitment to expanding the business.[11]

Paperless and MIB entered into an Asset Purchase Agreement (the "APA") to effectuate the sale of the business.[12] The APA provided that MIB would purchase Paperless' business for $5 million in cash plus multiple earn-out payments.[13] These earn-out payments would be triggered when Paperless' EBITDA expanded beyond certain thresholds.[14]

Section 2.7(f) of the APA provides:

Buyer believes its and Seller's interests are aligned in maximizing the PSG Business potential. Based on Seller's projections (as set forth in Section 2.7(e)), Buyer intends to provide capital to the PSG Business to support the essential operating expenses of the PSG Business, including without limitation, its marketing, travel and promotion expenses. Buyer's goal is to leverage its unique industry position, relationships and capabilities to grow the PSG Business and its product offerings. Of course, Buyer cannot predict the future and needs the ability to adjust as market conditions dictate. Nothing contained herein shall require the Buyer to operate the business in a manner that would have the effect of maintaining or increasing any Earn-Out Payment hereunder, it being understood that the Buyer shall operate the business in such manner as it deems necessary or desirable in its sole and absolute discretion. Without limiting the foregoing, the Buyer shall maintain full discretion with respect to all operations, including but not limited to (i) the determination of pricing of products, (ii) acceptance or rejection of any product sales or orders, (iii) the determination to discontinue the PSG Business or a certain product line, or to incorporate the activities of such PSG Business or product line into any of its

---

[11] *Id.* ¶ 24.
[12] Compl. Ex. A ["APA"].
[13] APA §§ 2.5, 2.7.
[14] *Id.*

3

affiliates, (iv) all decisions concerning production, marketing, sales, capital expenditures, expenses and related matters respecting the operations of its business, or any part thereof, and (v) all decisions pertaining to the personnel, staffing and other resources of the Buyer. The Buyer will at all times in good faith perform and observe its obligations hereunder.[15]

After the execution of the APA, Paperless and MIB began to dispute the appropriate strategic course for the future of Paperless.[16]  Paperless repeatedly requested information from MIB regarding its post-acquisition strategy to expand Paperless.[17]  MIB reassured Paperless it was committed to developing the acquired company, but Paperless became frustrated at MIB's failure to invest in Paperless so as to facilitate both the growth of the company and the accomplishment of earn-out targets.[18]

Paperless' 2021 year-end financials fell below those of prior years.[19]  This same underperformance continued throughout 2022.[20]  MIB has not made any earn-out payments to Paperless for the 2022 and 2023 financial years.[21]

---

[15] APA § 2.7(f).  In the APA, "Buyer" refers to MIB, and "PSG" refers to Paperless.
[16] *See generally* Compl. ¶¶ 29-45.
[17] *Id.*
[18] *Id.*
[19] Compl. ¶¶ 35, 44.
[20] *Id.* ¶ 44.
[21] *Id.*

## PROCEDURAL HISTORY

Paperless sent MIB a demand letter in June 2024 to satisfy the requirements of the Massachusetts Consumer Protection Statute, Chapter 93A.[22] Paperless filed this action on November 26, 2024.[23] On December 23, 2024, MIB filed a Motion to Dismiss the Complaint.[24] On January 31, 2025, Paperless filed its Answering Brief.[25] On February 21, 2025, MIB filed its Reply Brief.[26] On April 2, 2025, the Court heard oral argument on the Motion to Dismiss.[27]

## STANDARD OF REVIEW

The "pleading standards governing the motion to dismiss stage…are minimal."[28] The court must "accept all well-pleaded factual allegations [in the complaint] as true."[29] The court also must "read the complaint generously" and construe all such allegations "in a light most favorable to the [plaintiff]."[30] The court "credits even vague allegations, so long as they provide the opposing party notice of the claim;…gives the non-movant the benefit of all reasonable factual inferences;

---

[22] *Id.* ¶ 45; D.I. 25.
[23] D.I. 1.
[24] D.I. 6 ["MIB Opening"].
[25] D.I. 11.
[26] D.I. 13.
[27] D.I. 24.
[28] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 536 (Del. 2011) (citation omitted).
[29] *Id.*
[30] *Aramark US Offshore Servs., LLC v. Amity Lodges LTD*, 2022 WL 17087052 (Del. Super. Nov. 21, 2022) (citing *In re Tri-Star Pictures, Inc., Litig.*, 634 A.2d 319, 326 (Del. 1993), *as corrected* (Dec. 8, 1993), *and disapproved of by Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004)).

and…denies the motion if recovery on the claim is reasonably conceivable."[31] Dismissal pursuant to Rule 12(b)(6) is appropriate only where a complaint is so deficient that the plaintiff "could not recover under any reasonably conceivable set of circumstances susceptible of proof."[32]

## DISCUSSION

### A. Paperless' Fraudulent Inducement Claim Fails.

In Count I of the Complaint, Paperless alleges a fraudulent inducement claim against MIB, claiming MIB lied about its intent to invest in Paperless after the acquisition.[33] MIB contends this claim fails, as the alleged misrepresentations are directly contradicted by the terms of the APA.[34]

The elements of fraudulent inducement are:

(1) a false representation, usually one of fact, made by the defendant;
(2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth;
(3) an intent to induce the plaintiff to act or to refrain from acting;
(4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and
(5) damage to the plaintiff as a result of such reliance.[35]

---

[31] *Agahi v. Kelly*, 2024 WL 1134048, at *7 (Del. Super. Mar. 15, 2024).
[32] *Cent. Mortg.*, 27 A.3d at 536 (citation omitted).
[33] Compl. ¶¶ 46-53
[34] MIB Opening at 8.
[35] *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983).

By arguing that the alleged misrepresentations are directly contradicted by the APA, MIB targets the fourth element's requirement of justifiable reliance.[36]

Paperless' complaint alleges three specific misrepresentations were made, by MIB representatives, to induce Paperless to enter into the APA.[37] MIB allegedly misrepresented that it would:

a) Make investments in capital and human resources to grow the value and business of [Paperless];
b) Utilize the [MIB] Board's relationships with U.S. Life Insurance executives to expand the reach of [Paperless'] technology; and
c) Do whatever was required to maximize the reach and value of [Paperless'] technology.[38]

The crux of each alleged misrepresentation is that MIB would grow and expand Paperless after acquiring it.

Section 2.7(f) of the APA provides:

Nothing contained herein shall require the Buyer to operate the business in a manner that would have the effect of maintaining or increasing any Earn-Out Payment hereunder, it being understood that the Buyer shall operate the business in such manner as it deems necessary or desirable in its sole and absolute discretion.[39]

This broad language does not require MIB to facilitate an earn-out, let alone expand Paperless.[40]

---

[36] *See S'holder Representative Servs. LLC v. Albertsons Companies, Inc.*, 2021 WL 2311455, at *12 (Del. Ch. June 7, 2021) ("The plain terms of the Merger Agreement contradict the alleged misrepresentations on which Plated claims it relied.").
[37] Compl. ¶ 47.
[38] *Id.*
[39] APA § 2.7(f).
[40] *Id.*

7

When a plaintiff's fraudulent inducement claim alleges misrepresentations that are directly contradicted by the plain language of the contract, the fraud claim fails.[41] As the Court of Chancery held in *Chapter 7 Trustee Constantino Flores v. Strauss Water Ltd.*:

> Delaware is a contractarian state. As such, a party who enters into a contract governed by Delaware law will be charged with knowledge of the contents of the instrument and will be deemed to have knowingly agreed to the plain terms of the instrument absent some well-pled reason to infer otherwise.[42]

A party cannot plead justifiable reliance, a necessary element for a fraudulent inducement claim, where the contract contradicts an allegedly inducing misrepresentation.[43]

Paperless and MIB agreed to an APA that contains a clause granting absolute discretion to MIB in operating the business after closing. Paperless cannot now "claim fraud as a basis 'to avoid the deal it made in favor of the deal it now wishes it made.'"[44] Regardless of what MIB may or may not have said prior to the enactment of the APA, the APA unambiguously provides that MIB is not obligated to expand Paperless. The Motion to Dismiss Count I is GRANTED.

---

[41] *See Albertsons*, 2021 WL 2311455, at *12 ("The plain terms of the Merger Agreement contradict the alleged misrepresentations on which Plated claims it relied.")

[42] 2016 WL 5243950, at *6 (Del. Ch. Sept. 22, 2016) (citations omitted).

[43] *Id.*

[44] *Albertsons*, 2021 WL 2311455, at *13 (quoting *Chapter 7 Tr. Constantino Flores*, 2016 WL 5243950, at *9).

## B. Paperless' Breach of Contract Claim Fails.

Paperless' Complaint alleges MIB purchased Paperless based on MIB's stated intent to grow the business and then failed to invest in Paperless after closing.[45]  In Count II of the Complaint, Paperless alleges MIB breached Section 2.7(f) of the APA by failing to grow Paperless after the acquisition.[46]  MIB argues the clause does not bar such alleged conduct. [47]

Section 2.7(f) provides:

> Nothing contained herein shall require the Buyer to operate the business in a manner that would have the effect of maintaining or increasing any Earn-Out Payment hereunder, it being understood that the Buyer shall operate the business in such manner as it deems necessary or desirable in its sole and absolute discretion.[48]

This, along with other broad language in the clause grants MIB "absolute discretion" to determine whether or not to grow Paperless after the acquisition.

The broad language of this clause is dispositive.  Even accepting the allegations in the complaint as true, Section 2.7(f) does not require MIB to grow Paperless after the acquisition.  MIB is not required to reach the earn-out targets, and MIB is given "sole and absolute discretion" in operating Paperless.

---

[45] *See generally* Compl.
[46] Compl. ¶¶ 54-59.
[47] MIB Opening at 16-20.
[48] APA § 2.7(f).

Elsewhere in Section 2.7(f), the APA provides "[MIB] will at all times in good faith perform and observe its obligations hereunder."[49] "A party does not act in bad faith by relying on contract provisions for which that party bargained where doing so simply limits advantages to another party."[50] The APA enables MIB to choose not to invest in Paperless. While MIB's actions and inactions, made in accordance with the broad discretion provided in the APA, may have limited advantages to Paperless, this does not indicate MIB acted in bad faith. The Motion to Dismiss Count II is GRANTED.

## C. Paperless' Breach of the Implied Covenant of Good Faith and Fair Dealing Claim Fails.

In Count III of the Complaint, Paperless alleges MIB breached the implied covenant of good faith and fair dealing in the APA when it failed to "exert reasonable efforts to develop and promote" Paperless and failed to facilitate earn-out payments.[51] MIB contends this claim should be dismissed, as there is no gap in the APA for the implied covenant to fill.[52]

Paperless' implied covenant claim does not identify a gap to fill or term to be implied, instead mimicking its breach of contract claim.[53] Where a contract does not

---

[49] *Id.*

[50] *Nemec v. Shrader*, 991 A.2d 1120, 1128 (Del. 2010).

[51] Compl. ¶¶ 60-64.

[52] MIB Opening at 20-22.

[53] *Fortis Advisors LLC v. Dialog Semiconductor PLC*, 2015 WL 401371, at *5 (Del. Ch. Jan. 30, 2015) (granting the motion to dismiss an implied covenant claim, in an earn-out case, where the plaintiff's implied covenant claim mimicked its breach of contract claim).

10

have a gap for the implied covenant to fill, the implied covenant claim should be dismissed.[54]

The APA expressly provides a contractual standard governing MIB's conduct post-closing.[55]  Section 2.7(f) of the APA grants MIB broad discretion in managing Paperless after the acquisition, and expressly provides that MIB is not required to "operate the business in a manner that would have the effect of maintaining or increasing any Earn-Out Payment," but also provides that MIB will "at all times in good faith perform and observe its obligations hereunder."[56]  The Court will not "second-guess the parties' bargain"[57] and alter this express standard of performance clause so as to require MIB to effectuate an earn-out.  There is no gap in the APA to be filled by the implied covenant.  MIB's Motion to Dismiss Count III is GRANTED.

### D. Paperless' Massachusetts Chapter 93A Claim Fails.

In Count IV of the Complaint, Paperless alleges a claim under the Massachusetts Consumer Protection Statute.[58]  MIB contends Count IV fails, as

---

[54] *See id.* (dismissing an implied covenant claim where there was no contractual gap to fill); *Sharma v. TriZetto Corp.*, 2016 WL 1238709, at *5-6 (D. Del. Mar. 29, 2016) (same).
[55] *See* APA §2.7.
[56] *Id*.
[57] *Sharma*, 2016 WL 1238709, at *5.
[58] Compl. ¶¶ 65-69.

Paperless has not alleged unfair or deceptive conduct which occurred primarily or substantially in Massachusetts.[59]

"To maintain a Chapter 93A action 'the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice' must have 'occurred primarily and substantially within the commonwealth.'"[60] A plaintiff bringing a 93A action must plead facts showing "the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth [of Massachusetts]."[61] "[A] plaintiff may be expected to plead facts sufficient to suggest that the center of gravity of the offending conduct occurred primarily and substantially in Massachusetts, even though having pled them, the plaintiff does not have a burden of proving them."[62]

Paperless' Complaint alleges that MIB has a principal place of business in Massachusetts.[63] This paragraph provides the only geographic allegation in the entire complaint. Merely pleading that a company is headquartered in Massachusetts is insufficient for alleging a 93A claim.[64]

---

[59] MIB Opening at 23.
[60] *Evergreen P'ring Gp., Inc. v. Pactiv Corp.*, 2014 WL 304070, at *3 (D. Mass. Jan. 28, 2014) (quoting Mass. Gen. Laws Ch. 93A, § 11).
[61] *Kuwaiti Danish Comput. Co. v. Digital Equip. Corp.*, 781 N.E.2d 787, 799 (Mass. 2003).
[62] *Acacia Commc'ns, Inc. v. ViaSat, Inc.*, 2018 WL 2050125, at *7 (Mass. Super. Mar. 22, 2018).
[63] Compl. ¶ 7.
[64] *See HC&D, LLC v. Precision NDT & Cons. LLC*, 2024 WL 4626223, at *7 (D. Mass. Oct. 30, 2024) (granting a motion to dismiss a 93A claim where "the only allegations in the Amended Complaint that tie this case to Massachusetts are that Defendant is headquartered and incorporated in the state…and that the [contract] was to be governed by the laws of Massachusetts…"); *Parexel*

Paperless' 93A claim appears to be based on the same underlying misconduct as the fraud claim: that MIB made material misrepresentations to Paperless regarding its plans after acquiring Paperless.[65] According to the Complaint, these alleged misrepresentations occurred during various phone calls between Paperless and MIB's representatives.[66]

Pursuant to the Supreme Judicial Court of Massachusetts's decision in *Bushkin Associates, Inc. v. Raytheon Co.*, Plaintiff's allegations are insufficient.[67] In *Bushkin*, the court held that where allegedly deceptive representations are made by a phone call from Massachusetts to a different state and are acted upon in a different state, the aggrieved party cannot successfully allege a 93A claim, as the geographic nexus of the case lies outside Massachusetts.[68] Such is the case here, as Paperless is neither headquartered nor incorporated in Massachusetts.[69] The allegations contained in the complaint do not provide that alleged misrepresentations were acted upon in Massachusetts or that losses were sustained in Massachusetts. Based on Paperless' location, it appears any alleged misrepresentations were acted upon in Florida.

---

*Int'l LLC v. PrisymID Ltd.*, 2024 WL 3471930, at *7 (D. Mass. July 19, 2024) (dismissing a 93A claim where "the only allegation in the Complaint that ties this case to Massachusetts is that [a party] is headquartered in the state.").

[65] Compl. ¶ 68.
[66] *Id*. ¶¶16-24.
[67] 473 N.E.2d 662 (Mass. 1985).
[68] *Id*. at 672.
[69] Compl. ¶ 6.

Paperless has not met its burden of pleading facts showing the center of gravity of MIB's allegedly offending conduct occurred in Massachusetts. The Motion to Dismiss Count IV of the Complaint is GRANTED.

## CONCLUSION

For the reasons explained above, MIB's Motion to Dismiss is **GRANTED.**

**IT IS SO ORDERED.**

/s/ Meghan A. Adams

**Meghan A. Adams, Judge**